**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4207-15T1

AMANDA GAUGHRAN and
MICHAEL GAUGHRAN, her
husband, per quod,

      Plaintiffs-Appellants,

v.

COUNTY OF WARREN, WARREN
COUNTY COUNCIL, RICH MACGUIRE,
WASHINGTON CELEBRATES
AMERICA COMMITTEE, WASHINGTON
ORANGE CRATE DERBY and RALPH
BANGHART,

      Defendants,

and

WASHINGTON TOWNSHIP,
WASHINGTON BOROUGH and
WASHINGTON TOWNSHIP POLICE
DEPARTMENT,

      Defendants-Respondents.

_____

Submitted May 31, 2017 – Decided August 7, 2017

Before Judges Leone, Vernoia and Moynihan.

On appeal from the Superior Court of New
Jersey, Law Division, Warren County,
Docket No. L-0242-13.

Arseneault & Fassett, LLP, attorneys for
appellants (Angela M. DeFilippo, on the brief).

Keenan & Doris, LLC, attorneys for respondents
Washington Township and Washington Township
Police Department (Thomas A. Keenan, of counsel;
Bernadette M. Peslak, on the brief).

Florio, Perrucci, Steinhardt & Fader, LLC,
attorneys for respondent Washington Borough
(Mark R. Peck, of counsel and on the brief).

PER CURIAM

Plaintiffs, Amanda Gaughran and Michael Gaughran,[1] appeal from the motion judge's orders granting summary judgment in favor of defendants Washington Borough (Borough), Washington Township (Township) and Washington Township Police Department.[2] Applying the applicable provisions of the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, we affirm.

I.

The facts we consider are derived from the summary judgment record, including the pleadings, deposition transcripts, answers to interrogatories and certifications. We view the competent evidence in the light most favorable to plaintiff. See R. 4:46-2(c).

---

[1] Amanda Gaughran filed suit as the injured plaintiff; Michael Gaughran filed a concomitant per quod claim. We refer, herein, to Amanda as "plaintiff" for ease of reference.

[2] The judge entered one order in favor of the Borough, and a separate order in favor of the Township and the police department.

On July 4, 2011, plaintiff was injured in an accident while attending the Orange Crate Derby, an annual event during which youths drive wheeled crates down a course on Broad Street in Washington Borough. At the time of the accident, Kristine Blanchard was the Borough clerk and registrar, and Richard Phelan was the Borough manager. They both related the Borough road department maintained Broad Street, checked it for cracks and potholes, swept it before the event, and supplied barricades to prevent cars from entering the road during the event. Blanchard stated Washington Celebrates America (Committee), a non-profit entity, was responsible for other preparations and operations related to the derby. She said the Committee sectioned off portions of the race course with hay bales before the derby. Phelan indicated the Committee was responsible for directing spectators to areas from which they could watch the event, and for crowd control.

Rich Macguire,[3] the Committee chairperson on July 4, 2011, helped coordinate the derby. The Committee obtained permission from the Borough to conduct the event.

Macguire admitted the Committee, alone, was responsible for the safety of spectators during the derby. Although police

---

[3] Macguire is also referred to as Rich Maguire in various documents in the record.

prevented vehicular access to the race course, he testified police did not have an active role in crowd control or spectator protection, but did say police had authority to regulate crowds, prevent pedestrians on the race course, and dictate where spectators sat. He represented, however, police were never called upon to undertake those responsibilities because the Committee never had a problem accomplishing those tasks without police assistance. He said he would call police only if someone refused to comply with rules set by the Committee; that need did not arise on July 4, 2011.

As part of their safety protocol, Macguire said the Committee placed hay bales along the course. When asked whether spectators were told to sit behind the hay bales, he stated:

> Yes, and that's announced before every heat.
>
> . . . .
>
> I'm going to say 95 percent of Broad Street has curbing. There's a couple where like the aprons come into people's driveways, that is heavily blocked with hay bales. Telephone poles, anything that could be really dangerous, that is guarded with hay bales, but there are people that tend to come in the street in between races. . . . And if there is anybody on the street or even just in a dangerous area, they don't have to be on the street, they could be behind the hay bales.
>
> . . . .

> We want them off the hay bales. And Mark will make the announcement or somebody, if they're close enough, will say, "get off the hay bales" before each race.

Plaintiff was seated behind hay bales when, she alleges, a racer's crate encountered a defect in the road. Lisa Groff described the defect as a "manhole in the road with an uneven lift, which created a pothole situation in the road." She stated the "pothole" had been there for fifteen years. The crate veered off the race course, and hit the hay bale behind which plaintiff was located. Plaintiff was struck by the hay bale, toppled and was injured.

George Duckworth was a sergeant with the Township police department on the date of the accident. Duckworth testified, as did Macguire, Duckworth's only duty at the derby was to operate a radar gun to gauge the speed of the crates. Duckworth admitted he could leave his position for "police duties," if the Committee needed him to remove someone who was causing a problem, or someone called for police assistance.

## II.

We abide by our familiar standard of review that mandates summary judgment be granted if the court determines "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of

law." R. 4:46-2(c). We consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). We review the trial court's decision in these matters de novo, and afford the trial court ruling no special deference. Templo Fuente De Vida Corp. v. Nat. Union Fire Ins. Co., 224 N.J. 189, 199 (2016).

### III.

The intent of the TCA is to "reestablish a system in which immunity is the rule, and liability the exception." Bombace v. City of Newark, 125 N.J. 361, 372 (1991). Immunity is the legislation's "dominant consideration." Kolitch v. Lindedahl, 100 N.J. 485, 498 (1985) (O'Hern, J., concurring). The State's public policy is that public entities, such as a municipality, "shall only be liable for their negligence within the limitations of [the TCA] and in accordance with the fair and uniform principles established [in the TCA]." N.J.S.A. 59:1-2. "In other words, a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. County of Essex, 209 N.J.

51, 65 (2012) [Polzo II] (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)).

IV.

Plaintiff alleges the Township and its police department are not entitled to protection under the TCA, specifically N.J.S.A. 59:5-4, because police negligently performed their ministerial duties during the derby. The pertinent part of the TCA provides: "Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." N.J.S.A. 59:5-4. We attributed the legislative aim of another section of the TCA to this statute in Suarez v. Dosky, 171 N.J. Super. 1, 9 (App. Div. 1979), certif. denied, 82 N.J. 300 (1980):

> [W]hat the Legislature is seeking to protect in N.J.S.A. 59:5-1 is the Government's essential right and power to allocate its resources in accordance with its conception of how the public interest will be best served, an exercise of political power which should be insulated from interference by judge or jury in a tort action. We regard the same governmental imperatives as supporting the adoption of N.J.S.A. 59:5-4 . . . .

We held "N.J.S.A. 59:5-4 precludes suits against municipalities and their responsible officers based upon contentions that damage occurred from the absence of a police force or from the presence

7

of an inadequate one." Ibid. The protections are not absolute; we recognized:

> [a]lthough a police officer may not be liable for failing to respond (if, for example, he was performing some other official duty), if he does respond he will be subject to liability for negligence in the performance of his ministerial duties. N.J.S.A. 59:5-4 does not insulate police officers from unfortunate results of their negligently executed ministerial duties.
>
> [Id. at 9-10.]

Plaintiff posits the Township and police department are liable because police, knowing that crates crash into hay bales, and that curbs — not hay bales — provide protection to spectators from crates that veer toward them, did not advise plaintiff that she was sitting in a "danger zone, unprotected by the curb." She also argues that Duckworth "and other police had a duty to make sure spectators were not seated in an area behind hay bales where there were no curbs."

Plaintiff cites to five sources of proofs she alleges support one or both theories of liability: Duckworth's deposition testimony; answers to interrogatories by Blanchard;[4] a 2011 Orange Crate Derby brochure; Macguire's deposition testimony; and an expert report by Dr. Leonard Lucenko.

---

[4] We also consider the deposition of Blanchard, and her certification submitted by the Township.

The 2011 Orange Crate Derby brochure cautions: "**Safety note:** Broad Street will be lined with bales of hay. All spectators and non-participants <u>MUST</u> stay off the street and behind the hay bales. THE RACE WILL BE STOPPED UNTIL THIS REQUIREMENT IS COMPLIED WITH."

Blanchard provided in answers to interrogatories, "Upon information and belief [the Committee] and the Washington Township Police Department determines where spectators/pedestrians were to sit and/or stand to observe the soapbox derby race." Blanchard was asked during her deposition what steps the Borough took regarding spectators "who are not allowed on the road during derby time to insure their safety." She answered, the Borough relies on the Committee "to provide for the safety of any spectators, and we also rely on the Washington Township Police Department to protect any spectators." She added there was no written document indicating such reliance.[5] A follow-up colloquy ensued:

> Q. When you say, when the Borough relies on the Washington Celebrates America nonprofit organization and the Washington Township Police Department to ensure the safety of the pedestrians during the derby time, what does the Borough believe that Washington Township Police Department and the not-for-profit does to ensure the safety of the spectators when the derby is taking place on their road?

---

[5] There was an agreement between the Committee and the Township regarding police services, to which the Borough was not a party. <u>See</u> <u>infra</u> note 6.

. . . .

> A. The Washington Celebrates America organization sections off portions of the sidewalk with hay bales. That is where the spectators are supposed to be standing. Washington Township Police Department monitors where spectators are standing, and the Washington emergency squad is also on hand.

Blanchard acknowledged her answer was not based on any writing or discussions in which she took part in her official capacity, but on knowledge gained from seeing past derbies. In a certification submitted through the Township's counsel, she said she "just assumed that the Washington Township Police Department was responsible for spectator safety" at the derby, and that she "never possessed any first-hand knowledge of the statements that [she] made in this case regarding Washington Township Police Department's being responsible for spectator safety."

In determining whether summary judgment should be granted, we are not "to weigh the evidence and determine the truth of the matter," and must view the evidence "in the light most favorable" to plaintiff, Brill, supra, 142 N.J. at 540; but we must consider only competent evidence. Polzo v. County. of Essex, 196 N.J. 569, 586 (2008) [Polzo I]. "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Cortez v. Gindhart, 435 N.J. Super. 589, 604 (App.

Div. 2014) (quoting Hoffman v. Asseenontv Com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009)). "That the trier of fact makes determinations as to credibility 'does not require a court to turn a blind eye to the weight of the evidence; the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."'" O'Laughlin v. Nat'l. Comm. Bank, 338 N.J. Super. 592, 606 (App. Div. 2001) (quoting Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993)).

Blanchard's interrogatory answer, indicating the Township police told spectators where to sit or stand during the 2011 derby, is not competent evidence. It is either hearsay or a baseless assumption; it is not based on personal knowledge of circumstances on the day of the accident. Blanchard was not a Township police employee but the Borough clerk, and the Borough was not a party to the agreement between the Committee and the Township police department. Likewise, any evidence introduced through Blanchard that the Township police were responsible to protect the safety of spectators on July 4, 2011, is hearsay or assumption. The only personal knowledge Blanchard possessed was gained from her observations of past derbies. None of the evidence offered through Blanchard regarding police actions or duties during the

derby at which plaintiff was injured, therefore, is competent. See James Talcott, Inc. v. Shulman, 82 N.J. Super. 438, 443 (App. Div. 1964) (holding evidence based on "information and belief" without information supplied by "persons having actual knowledge of the facts, [is] insufficient to withstand a motion for summary judgment"). That evidence does not raise a genuine material issue of fact and does not preclude the grant of summary judgment.

In a report submitted by plaintiff in support of her contention that police failed to protect her safety, her expert opined:

> Since the Washington Township Police Department agreed to assist with crowd and traffic control, in my professional opinion as a professor of recreation and a recreation risk management and safety expert, it was incumbent upon the Washington Township Police Department to perform this service in a proper manner, especially since, as Sergeant George Duckworth testified, "Safety is always a police officer's duty." . . . .However, the case documentation indicates that the Washington Township Police Department was negligent in its performance of the service it provided with respect to the Orange Crate Derby on July 4, 2011.

The expert points to no standard, only Duckworth's statement regarding general police duties, to buttress his opinion. It is a net opinion; it does not offer the "'why and wherefore' supporting his . . . analysis." Henebama v. SJTA, 430 N.J. Super. 485, 508 (App. Div. 2013) (quoting Pomerantz Paper Corp. v. New

Cmty. Corp., 207 N.J. 344, 372 (2011)). The expert's report is not competent evidence, Polzo I, supra, 196 N.J. at 586, that would sustain plaintiff's opposition to the grant of summary judgment. Id. at 584 n.5.

Even accepting the evidence offered through Blanchard and the expert as competent and uncontested, none of the evidence proffered by plaintiff links any police officer to a ministerial duty relating to the accident that resulted in plaintiff's injury, or even places a police officer at the scene prior to or during the accident.

Considering that the Committee entered into an agreement with the Township to provide police services[6] during the derby, the only proofs that establish the activity of any police officer during the derby are Duckworth's deposition, Macguire's deposition, and answers to Form C interrogatories by the Township police department. They inform us that Duckworth was tasked to operate the radar gun that gauged the speed of the derby contestants. He did not know who placed the hay bales along the race course; they were in place before he began operating the

---

[6] A copy of the agreement was provided in plaintiff's appendix; paragraph one reads, "The Township of Washington shall provide the services of _____ uniformed police officer(s) to [the Committee]. A handwritten note was made over the blank: "see attached coverage sheet" appears above an arrow drawn just above the line. The "coverage sheet" was not provided to us.

radar. He was located one-hundred to one-hundred and fifty yards from plaintiff's location, above the finish line; he did not see where plaintiff was seated before the accident. He did not know if Macguire, as Macguire alleged, told plaintiff to move from where she was seated prior to the accident. He admitted that he could have left his post if called to regular police duties. He cited examples of such duties: if he was asked to remove someone causing a problem or received a "call for police assistance."

Duckworth testified about other police duties: he admitted police put up plastic or wooden barricades to keep vehicular traffic off the race course. He believed police were "aware of the event and [] provide[d] crowd and traffic control assistance," and agreed that Township police patrolled "the area in the Borough of Washington where the race was held."[7] He elaborated that traffic control was to assure no vehicular traffic interfered with the derby, and that crowd control meant "if anybody caused a problem, then to try to aid in that nobody interfered with the race course or was walking into the race area." Police duties also included ensuring that people sat behind the hay bales, "if asked by the race organizers." Duckworth denied, and there is no

---

[7] Township police patrolled Washington Borough under a shared services agreement. The Borough does not have its own police department.

evidence that, the police were asked to patrol the race course to make sure spectators were safe.

A comment cited by plaintiff as evidence of defendants' responsibilities, that "[s]afety is always a police officer's duty," was made during the following exchange during Duckworth's deposition:

> Q. Okay. Who ensured the safety of the spectators so that they would not be seated or walk on the roadway where the race was?
> A. The race organizers.
> Q. And who was their safety -- who patrolled the -- from the race organizers?
> A. Don't know.
> Q. So are you saying that if a police officer was in the area and saw a person set up a chair on the side of the hay bails [sic] that was in the race area, that the police officer would not say anything?
> A. I would say something.
> Q. Okay. You would?
> A. Yes.
> Q. But was it within your duty at the time to say something?
> A. Safety is always a police officer's duty.
> Q. Okay. So it's fair to say that if there were police officers in the area and someone was not seated behind the hay bail [sic], that a police officer would then act on it and ask the person to move?
> A. Correct.

Duckworth was responding to hypothetical questions posed by plaintiff's counsel. He was not commenting on what actually happened during the derby. Notably, he was not asked to comment

15

on the situation here, where plaintiff _was_ seated behind a hay bale, not in the race area.

Moreover, the adoption of plaintiff's argument, that Duckworth's statement evidenced a duty that was negligently performed by the police, would lead to the unintended and absurd result of denying police immunity under N.J.S.A. 59:4-5 in every case in which they were involved. Police officers "perform a wide range of social services, such as aiding those in danger of harm, preserving property, and creating and maintaining a feeling of security in the community." State v. Bogan, 200 N.J. 61, 73 (2009). Thus, safety is every police officer's duty — all the time.

Plaintiff would impose a duty on all officers to warn of dangerous conditions even in situations when police are not tasked with any duty to inspect a location, or when their assistance is not requested, or when they have not responded to the location of the dangerous condition. That interpretation flies in the face of the general principles of the TCA: that immunity is the Act's "dominant consideration," Kolitch, supra, 100 N.J. at 498, and that "immunity from tort liability is the general rule and liability is the exception." Coyne v. DOT, 182 N.J. 481, 488 (2005) (internal citations omitted).

The only evidence linking police to plaintiff and the accident scene is the answer to question two of the Form C interrogatories submitted by the Township police department.[8] Although Duckworth denied ever being at the accident scene before it was cleared, the answer provided that Duckworth observed the accident scene and plaintiff after the accident. The interrogatory answer does not connect Duckworth to plaintiff prior to, or during, the accident. Even if true, it places Duckworth at the scene after plaintiff was injured.

In support of her contention that the Township police "negligently executed their duties by directing spectators, including [plaintiff], to sit within [an] unsafe, unprotected area," plaintiff relies on the holdings in Suarez, supra, and Aversano v. Palisades Interstate Parkway Comm., 363 N.J. Super. 266 (App. Div. 2004), aff'd as modified, 180 N.J. 329 (2004).[9] Those cases, however, involved actual police responses to situations where citizens were imperiled.

---

[8] This evidence was not cited by plaintiff as supporting her arguments on appeal, but it was mentioned in Duckworth's deposition; thus we examine it.

[9] The Supreme Court remanded the case to the trial court to consider discretionary act immunity under N.J.S.A. 59:2-3(a) or N.J.S.A. 59:3-2(a). The Court considered only immunity for incidents on unimproved property; it did not analyze immunity for police actions under the TCA. Aversano, supra, 180 N.J. at 332.

In Suarez, motorists stranded on Route 80 were killed as they walked along the highway after state troopers, who responded to the scene of the motorists' minor accident, refused their request to escort them to a safe place off the highway, or call a taxi. Suarez, supra, 171 N.J. Super. at 5-6. Police in Aversano, responding to a scene after a young man fell off a 300-foot cliff, did not call a rescue squad, and decided to execute a "recovery operation" instead of a more urgent "rescue operation," thinking the man could not have survived the fall; the man was alive when police reached him. Aversano, supra, 180 N.J. at 330. Plaintiffs attributed his death to the lost chance of survival caused by the negligent failure of police to initiate a rescue effort. Id. at 331.

Those cases are inapplicable here. "[T]his is not a case like Suarez" or Aversano "where police who were on the scene behaved negligently." Sczyrek v. Cty. of Essex, 324 N.J. Super. 235, 242 (App. Div. 1999), certif. denied, 163 N.J. 75 (2000). There is no competent proof police had any interaction with plaintiff, or undertook any duty related to plaintiff's safety. There is no evidence that police directed plaintiff to sit in an area behind hay bales that was unprotected by curbing. In her brief, plaintiff admits "[s]he walked on Broad Street until she saw an open spot where [she and her sons] could sit."

Plaintiff has not provided any evidence that police, at any time, undertook responsibility to tell her or other spectators where to sit, or to ensure that she or other spectators sat behind curbed areas. Police patrolled the general area and prevented entry by vehicular traffic. Duckworth operated the radar. But police did nothing in relation to plaintiff's accident that would be considered a ministerial duty, the negligent execution of which would expose them to liability. They had no interaction with plaintiff, and did not undertake any responsibility regarding her seat location, so they and the Township are entitled to immunity. We do not think that plaintiff's proposed limitless duty on police to provide safety is the type of ministerial duty for which the police could be liable under Suarez. See Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 412 (1988) (noting that N.J.S.A. 59:5-4 has "been found to cover ministerial as well as discretionary acts," citing Wuethrich v. Delia, 155 N.J. Super. 324 (App. Div.), certif. denied, 77 N.J. 486 (1978)); Pico v. State, 116 N.J. 55, 62 (1989) (noting that general "liability [for ministerial acts] yields to a grant of immunity" under N.J.S.A. 59:5-4, citing Wuethrich, supra, 155 N.J. Super. at 326); see also Parsons v. Mullica Tp. Bd. Of Educ., 440 N.J. Super. 79, 96 & n.8 (App. Div. 2015), aff'd, 226 N.J. 297 (2016). A claim of negligence does "not diminish the legislative immunity granted to the municipality 'for

19

failure to provide police protection,' under N.J.S.A. 59:5-4."

Weiss v. N.J. Transit, 128 N.J. 376, 381 (1992) (quoting Henschke

v. Borough of Clayton, 251 N.J. Super 393, 400 (App. Div. 1991)).

"N.J.S.A. 59:5-4 applies when the liability claim is based on

alleged 'failure to provide police protection,' [even where] that

failure allegedly stems from carelessness or negligence of rank

and file employees, and not from a governmental policy

determination." Sczyrek, supra, 324 N.J. Super. at 242, 245 (App.

Div. 1999).

The Township and police department do not face liability for

their decision not to provide police protection to the spectators,

or any failure to provide a sufficient level of protection. That

was a policy decision that is afforded immunity under the TCA.

Id. at 239-40, 241-42.

V.

A provision of the TCA limits public entity liability for

injuries resulting from conditions on public lands or in public

facilities. The pertinent part of N.J.S.A. 59:4-2 provides:

> A public entity is liable for injury caused
> by a condition of its property if the
> plaintiff establishes that the property was
> in dangerous condition at the time of the
> injury, that the injury was proximately caused
> by the dangerous condition, that the dangerous
> condition created a reasonably foreseeable
> risk of the kind of injury which was incurred,
> and that . . . :

. . . .

> b.  a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.[10]

Plaintiff contends N.J.S.A. 59:4-2 does not afford the Borough immunity because the Borough failed to properly inspect the road prior to the race, and failed to notice and correct the defect that, according to the certification of Lisa Groff, had been there for fifteen years.

In Polzo II, our Supreme Court set forth the elements a plaintiff must prove to recover from the Borough. First, plaintiff must show that the road defect was a "dangerous condition [that] created a reasonably foreseeable risk of the kind of injury which was incurred." Polzo II, supra, 209 N.J. at 66 (quoting N.J.S.A. 59:4-2) (alteration in original). "Only if plaintiff can prove this element do we turn to the next step: . . . whether the 'public entity had actual or constructive notice of the dangerous

_____

[10] Plaintiff does not allege that the Borough created the dangerous condition; N.J.S.A. 59:4-2a is, therefore, inapplicable to this case.

condition' within 'a sufficient time' before the accident that it could 'have taken measures to protect against [it].'" Ibid. (quoting N.J.S.A. 59:4-2b). "Even if plaintiff has met all of these elements, the public entity still will not be liable unless the public entity's failure to protect against the dangerous condition can be deemed 'palpably unreasonable.'" Ibid. (quoting N.J.S.A. 59:4-2).

As was the case in Polzo II, we do not find the Borough was on actual or constructive notice of a dangerous condition that created a reasonably foreseeable risk of injury, or that the Borough's failure to repair the defect was palpably unreasonable.

A.

The TCA defines actual and constructive notice, in the context of N.J.S.A. 59:4-2b, in N.J.S.A. 59:4-3:

> a. A public entity shall be deemed to have actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> b. A public entity shall be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

Phelan, the Borough manager, admitted in depositions that Borough employees "swept" the course with a street sweeping vehicle prior to the derby, and that the road department checked for potholes that could affect the crates. There is no evidence any Borough employee found the defect alleged by plaintiff during the inspection. In fact, plaintiff has not shown any evidence that the Borough had actual knowledge of the defect.

We also find plaintiff failed to show the defect "was of such obvious nature that the [Borough], in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3b. Plaintiff has proffered no evidence about the road defect, save for Lisa Groff's description of "a manhole in the road with an uneven lift, which created a pothole situation in the road."[11] Although she certified that the defect existed for fifteen years prior to plaintiff's accident, there is no evidence anyone reported it to the Borough, or that there were any accidents or other incidents that would have put the Borough on notice of

_____

[11] The parties have not provided any description other than that given by Goff. We reviewed the appendices and do not find evidence that informs us of any other description. Cf. Polzo II, supra, 209 N.J. at 77 (describing the defect as "barely one-and-one-half inches in depth on the roadway's shoulder"); Atalese v. Long Beach Twp., 365 N.J. Super. 1, 3, 4 (App. Div. 2003) (describing the condition as a depression of pavement in a bike lane, approximately three-quarters of an inch deep "for a distance of approximately one block").

the defect. Absent a description of the defect that would show that Borough employees should have discovered an obvious defect, there is a failure of proof by plaintiff. Polzo II, supra, 209 N.J. at 74-75.

Likewise, plaintiff failed to prove the Borough knew, or should have known, of the defect's dangerous character. A dangerous condition is "a condition of the property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1a. "[T]o be considered a 'substantial risk of injury' a condition of property cannot be minor, trivial, or insignificant." Atalese, supra, 365 N.J. Super. at 5.

The Borough obviously knew the derby would be run on the road. Its employees inspected the road in preparation for the derby that had been held annually for a number of years. The Borough manager stated, in his deposition, the Borough governing body approved the event. It was foreseeable that racer crates would use the road. Thus, Borough employees, when they inspected the road, should have been looking for defects that would pose a

danger to crates.[12]  But plaintiff has not shown the defect, even if it did exist for fifteen years, was so obvious that the workers, exercising due care, should have discovered it and its dangerous character.  In those fifteen years, there is no proof that the defect had any impact on any person or vehicle, including past crate racers and those racing on the date of the accident.  There is no evidence the Borough was on constructive notice of the defect.

B.

We also find plaintiff did not prove the Borough's failure to repair the road defect was palpably unreasonable.  That proof is required under the TCA because:

> even if the public entity's property constituted a "dangerous condition;" even if that dangerous condition proximately caused the injury alleged; even if it was reasonably foreseeable that the dangerous condition could cause the kind of injury claimed to have been suffered; and even if the public entity was on notice of that dangerous condition; no

---

[12] We do not agree with the Borough's argument that the dangerous condition here related to the use of the property for orange crate racing, and not the property itself, thereby immunizing the Borough from liability.  See Levin v. County of Salem, 133 N.J. 35 (1993) (holding that an injury sustained by jumping off a bridge was caused by diving into shallow water; the bridge was not the dangerous condition).  Here, the road defect is alleged to have propelled the crate into hay bales in front of plaintiff, toppling her and causing injury. We examine the defect in the roadway, not the use of the roadway by the racers, in determining whether there was a dangerous condition.

liability will be imposed "upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable."

[Polzo I, supra, 196 N.J. at 585 (quoting N.J.S.A. 59:4-2).]

Palpably unreasonable behavior is "patently unacceptable under any given circumstances." Kolitch, supra, 100 N.J. at 493. "[F]or a public entity to have acted or failed to act in a manner that is palpably unreasonable, 'it must be manifest and obvious that no prudent person would approve of its course of action or inaction.'" Ibid. (quoting Polyard v. Terry, 148 N.J. Super. 202, 216 (Law Div. 1977), rev'd on other grounds, 160 N.J. Super. 497 (App. Div. 1978), aff'd o.b., 79 N.J. 547 (1979)). Plaintiff bears the burden of proving the Borough's inaction was palpably unreasonable. Ibid. "Although ordinarily the question of whether a public entity acted in a palpably unreasonable manner is a matter for the jury, in appropriate circumstances, the issue is ripe for a court to decide on summary judgement." Polzo II, supra, 209 N.J. at 75 n.12.

Polzo II is instructive in our review of this issue. Our Supreme Court noted N.J.S.A. 59:4-2 is premised on the difficulty public entities face in caring for vast tracts of public property. Id. at 76-77. The Court credited the public entity's right to

26

choose among competing demands, in the face of limited resources, in determining whether it should act or not to protect against dangerous conditions, unless its decision is palpably unreasonable. Ibid.

We cannot conclude plaintiff met her burden with regard to this issue. We note that plaintiff's expert opined the Borough was negligent in inspecting and maintaining the roadway, which negligence was "further enhanced" by the Borough's repair of the defect after the accident. He cited only to a phrase in a text, titled, "Legal Liability and Risk Management for Public and Private Entities," in support of his conclusion: "There is a responsibility to have a maintenance program with an inspection system to identify foreseeable hazards and those presently existing . . . ." Without further discussion, the expert wrote, "As a professor of recreation and a recreation risk management and safety expert, it is my opinion that the above concept has applicability to all organizations and entities, both public and private."

The expert did not explain the basis for his opinion that the Borough's repair of the defect "enhanced" its negligence. He did not cite to any standard that provides for a proper road inspection program by a municipality. He offered a net opinion, just as he did when analyzing the liability of the Township and police force. Polzo I, supra, 196 N.J. at 582-84. Like his opinion regarding

27

the Township's liability, his report does not provide competent evidence, id. at 586, and it does not sustain plaintiff's burden of proof. Id. at 584 n.5.

The defect was not apparent to the Borough employees when they inspected the race course. No complaints were ever received about the defect, even from plaintiff's witness who noticed it fifteen years prior to the accident. No previous accidents or injuries were caused by the defect. There is no evidence that any racer in any derby, including the racer driving the crate that hit the bales in front of plaintiff's location, was injured by the defect. Polzo II, supra, 209 N.J. at 77 (citing to Justice Stein's concurrence in Garrison v. Twp. of Middletown, 154 N.J. 282, 311 (1998), which recognized that the lack of prior complaints, reports or injuries were factors in determining this issue).

The Court in Polzo II observed that roadways are "ordinarily used for vehicular travel." Id. at 70 (quoting N.J.S.A. 39:1-1). The Court opined, notwithstanding the acknowledged use of roadways by bicyclists, they "generally are built and maintained for cars, trucks and motorcycles." Id. at 71. Recognizing that bicyclists face dangers on roadways, including potholes and depressions, that do not present hazards to motor vehicles — the general, intended users of roadways — the Court found "[p]ublic entities do not have the ability or resources to remove all dangers peculiar to

28

bicycles.  Roadways cannot possibly be maintained completely risk-free for bicyclists."  <u>Ibid.</u>

The same can be said of the crates racing in the derby.  That event is held once a year.  Although the use of the roadway by the crates each year is foreseeable, crate racers are not the general, intended users of the roadway.  As such, under the <u>Polzo II</u> rationale, the Borough may reasonably give less priority to smoothing over every bump in the road crate racers may encounter.  <u>Id.</u> at 77.

Even if the Borough had notice of the defect and its dangerous condition, plaintiff has not met "the heavy burden of establishing" that it was palpably unreasonable, under these circumstances, for the Borough to refrain from repairing the defect.  <u>Russo Farms v. Vineland Bd. of Educ.</u>, 144 <u>N.J.</u> 84, 106 (1996).

All defendants are entitled to the protection of the TCA.  Summary judgment was properly granted by the trial court.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION