**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3296-14T4

NINA PAGAN,

       Plaintiff-Appellant,

v.

NEWARK HOUSING AUTHORITY,

       Defendant-Respondent.

_____

Argued August 15, 2017 — Decided October 2, 2017

Before Judges Messano and Sumners.

On appeal from the Superior Court of New
Jersey, Law Division, Essex County, Docket No.
L-1541-12.

Jude Nelson argued the cause for appellant
(The Law Firm of Nelson & Associates, PA,
attorneys; Mr. Nelson, on the brief).

James G. Serritella argued the cause for
respondent (Biancamano & DiStefano, PC,
attorneys; Mr. Serritella, on the brief).

PER CURIAM

On January 30, 2011, plaintiff Nina Pagan was a tenant in a

building owned and managed by defendant Newark Housing Authority

(NHA) when an unknown and unidentified armed intruder viciously

attacked her inside her apartment. Although she admittedly had no proof of a connection between the two events, plaintiff believed the attack was in retaliation for her actions in April 2010, following her six-year old son witnessing a murder outside the apartment. Plaintiff reported that incident to NHA's management, complaining that her son was traumatized by the events. About three months later, plaintiff reported that her car was vandalized while parked outside the apartment.

After the April 2010 incident, plaintiff requested transfer to another NHA property, and NHA twice offered her units at other sites. In each case, plaintiff refused the offer, citing the conditions in the unit or criminal activity at the sites; at plaintiff's request, NHA continued her on the authority's waiting list for vacancies. After the assault, plaintiff filed an emergency transfer request, and, in August 2011, NHA offered her a unit at another complex, which plaintiff refused. NHA offered plaintiff another unit in December, which she accepted, and NHA transferred plaintiff in January 2013.

In the interim, in February 2012, plaintiff filed suit against NHA, alleging negligence for: failing to supervise the common areas of the complex and maintain the premises in a safe condition; failing to relocate plaintiff; failing to comply with applicable State and federal laws and regulations; and failing to exercise

the degree of care required by law. NHA answered and discovery ensued before NHA moved for summary judgment.

In his oral opinion on the record, the motion judge reviewed certain provisions of the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (the TCA). He focused on plaintiff's contention that NHA was liable for a dangerous condition on its property, N.J.S.A. 59:4-2, or liable because it negligently failed to transfer her after her son witnessed the murder in 2010. The judge concluded that NHA could not be liable for a dangerous condition on its property because of the criminal acts of third parties, and, in any event, NHA's conduct was not "palpably unreasonable." As to plaintiff's general negligence claim, the judge concluded there was no "probable cause," i.e., it was mere speculation that the attack resulted from the April 2010 incident. He also concluded NHA was immune from liability pursuant to N.J.S.A. 59:5-4 (immunizing public entities and employees "for failure to provide police protection service or . . . sufficient police protection service."). Lastly, the judge concluded plaintiff had not sustained a "permanent loss of a bodily function, permanent disfigurement or dismemberment" because of the attack. N.J.S.A. 59:9-2(d); Brooks v. Odom, 150 N.J. 395 (1997). The judge dismissed plaintiff's complaint, and this appeal followed.

A-3296-14T4

Before us, plaintiff contends the judge misapplied summary judgment standards, the TCA did not confer immunity upon NHA for its negligent conduct in failing to transfer her and supervise its employees, and the injuries she suffered were cognizable under N.J.S.A. 59:9-2(d). We have considered these arguments in light of the record and applicable legal standards. We affirm.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 414 (2016) (citing Mem'l Props., L.L.C. v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). We "identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c)).

> [A] determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill, supra, 142 N.J. at 540.]

We then decide "whether the motion judge's application of the law was correct." Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387

N.J. Super. 224, 231 (App. Div.), certif. denied, 189 N.J. 104 (2006). In this regard, "[w]e review the law de novo and owe no deference to the trial court . . . if [it has] wrongly interpreted a statute." Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009).

Initially, plaintiff never asserted that she suffered injuries because of inadequate policing of security at the housing site. Pursuant to N.J.S.A. 59:5-4, the TCA would indeed immunize NHA from such a claim. See, e.g., Sczyrek v. County of Essex, 324 N.J. Super. 235, 240-42 (App. Div. 1999) (holding immunity barred the plaintiff's claim that courthouse security plan was inadequate).

Rather, we discern plaintiff's argument to be that NHA was aware that the property presented a dangerous condition for her, and that NHA's employees acted negligently in addressing that danger. As to the first part of that claim, the motion judge properly cited our decisions in Rodriquez v. New Jersey Sports & Exposition Authority, 193 N.J. Super. 39 (App. Div. 1983), certif. denied, 96 N.J. 291 (1984), and Setrin v. Glassboro State College, 136 N.J. Super. 329 (App. Div. 1975). In Rodriquez, after the plaintiff was attacked and robbed in the parking lot of the Meadowlands Race Track, he sued, alleging inadequate security and lighting, failure to warn of known dangers and failure to maintain reasonably safe premises. Rodriquez, supra, 193 N.J. Super. at

41.    In rejecting any argument that the public entity could be liable for a "dangerous condition" on its property, N.J.S.A. 59:4-1(a), Judge Michels clearly stated:

> There cannot be the slightest doubt that the mere presence at the Meadowlands complex of persons with criminal intent or purpose does not constitute a dangerous condition within the meaning of the foregoing statutes so as to impose liability upon the Authority. To the contrary, liability cannot be visited upon the Authority under the Tort Claims Act by reason of the criminal assault and robbery of Rodriguez.
>
> [Id. at 44 (citing Setrin, supra, 136 N.J. Super. at 333).]

In this case, NHA was not liable in a general sense for a dangerous condition on its property.[1]

The issue really comes down to whether plaintiff established a prima facie case that NHA's employees, armed with the knowledge of the April 2010 murder incident and the vandalism of plaintiff's car three months later, acted negligently in failing to relocate her to another apartment. See N.J.S.A. 59:2-2(a) ("A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.").

---

[1] Plaintiff essentially conceded this point at oral argument by acknowledging she was not asserting a premises liability claim.

We agree with the motion judge that plaintiff provided nothing but mere speculation that the assault in her apartment was a proximate result of NHA's alleged negligence in dealing with plaintiff's transfer requests. See Robinson v. Vivirito, 217 N.J. 199, 208 (2014) (citations omitted) (emphasis added) ("The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages.").

Plaintiff concedes that she has no proof whatsoever that the 2011 attack in her apartment was retribution for her report of her son having witnessed the April 2010 murder, or that it was in any way related to the vandalism of her car. The judge concluded the attack was the result of random violence and, unfortunate as it may be, all too common an event in some of the public housing sites in our cities.

Plaintiff criticizes specific actions or omissions of NHA personnel who dealt directly with her regarding her transfer requests, and asserts, in blanket fashion, NHA negligently hired, supervised, trained and retained those employees. The argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Moreover, accepting such claims arguendo, plaintiff still failed to establish any proximate causation.

In light of our holding, we choose not to address whether plaintiff's claimed injuries vaulted the threshold requirements of N.J.S.A. 59:9-2(d).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3296-14T4