124 N.J. Super. 361 (1973)
307 A.2d 114
SALVATORE CALTAVUTURO, AN INFANT BY HIS GUARDIAN AD LITEM, CATENO CALTAVUTURO AND CATENO CALTAVUTURO, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
CITY OF PASSAIC, A MUNICIPAL CORPORATION, BOARD OF EDUCATION OF THE CITY OF PASSAIC, A BODY POLITIC AND CORPORATE, AND SEYMOUR PUCKOWITZ, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1973.
Decided July 2, 1973.
*363 Before Judges LEONARD, HALPERN and RIZZI.
Mr. Daniel Crystal argued the cause for appellants (Messrs. Cohn & Lifland, attorneys).
Mr. David L. Ploshnick argued the cause for respondents Board of Education of the City of Passaic and Seymour Puckowitz (Mr. Samuel A. Gennet, attorney).
Mr. William G. Scott argued the cause for respondent City of Passaic (Messrs. Lieb, Teich, & Berlin, attorneys).
The opinion of the court was delivered by LEONARD, J.A.D.
This is an action in negligence to recover damages for injuries sustained by infant plaintiff Salvatore Caltavuturo when he stepped through a large hole in a rusted chain-link fence partially surrounding Passaic public school 11, which he attended.
Suit was originally brought by Salvatore through his father Cateno as guardian ad litem and by his father individually against the City of Passaic (Passaic) only, alleging that the city was negligent in maintaining the area in and around the fence to which it held title. Thereafter Passaic served a third-party complaint against the Board of Education of the City of Passaic (board) and Seymour Puckowitz, the principal of public school 11, seeking contribution and indemnification. Plaintiffs then served an amended complaint naming the city, the board and Puckowitz as parties defendant.
The matter came on for jury trial and at the conclusion of plaintiffs' case, on motion, the action was dismissed as to all defendants. The board and the principal were relieved of liability by the trial court on the ground that Salvatore was not injured on school property and, in any event, neither the board nor Puckowitz owed a duty of care to him under the circumstances presented. Further, even if a duty were owed, plaintiffs' proofs were insufficient in establishing a *364 deviation from the norm. As to Passaic, the court determined that its activity in connection with maintaining the fence was governmental in nature and, alternatively, N.J.S.A. 40:9-2, then in effect, specifically immunized Passaic from liability. Plaintiffs' appeal raises claims of error in the dismissal ordered with respect to all defendants.
Plaintiffs' evidence, taken in its most favorable light, disclosed that on December 12, 1968, the date of the occurrence in question, the approximately 1,500 students of public school 11 were dismissed to go home for lunch at 11:40 A.M. since food is not available on the premises. Puckowitz, called as plaintiffs' witness, testified that at the time students were dismissed for lunch and when they reported back to school, two gym teachers, two vice-principals and he stationed themselves on the playground which was divided into several supervisory areas. Normally, by 11:55 A.M. all children had left the school grounds and the administrative staff returned to the school from the playground to eat a quick lunch.
Salvatore, then 12 years of age, was a school crossing guard. He, as well as all members of the school patrol, were excused at 11:35 in order to assume their respective posts. On the day in question he assisted several children across an intersection of two streets fronting the school.
Shortly before noon, following completion of his crossing-guard duties, Salvatore and a friend started home for lunch. As a shortcut the boys re-entered a playground area which adjoined the school through a six-feet wide by eight-feet high hole in the chain-linked fence which enclosed the playground on one side. Salvatore cut his right knee on a jagged, rough-edged portion of the fence causing his leg to become inflamed. Eventually, Salvatore developed osteomyelitis, a permanent bone disease.
The fence is mounted on a concrete base which varies in height from a few inches to over two feet. At the point Salvatore was injured there is a two-foot drop from the sidewalk to the concrete yard below. Originally the fence *365 completely enclosed several tennis courts. Although painted boundary lines remain visible, there was testimony from the street foreman of Passaic's Department of Public Works that approximately 12 years previously the nets were taken down and the holes caused by the removal of the poles to which the nets were attached filled in. Since that time the school has routinely used the area as a playground. No natural dividing line exists indicating where school property ends and municipal-owned land begins. Indeed, prior to Salvatore's accident Puckowitz did not know whether the board or Passaic owned the property in question. The street foreman further testified that although Passaic's maintenance personnel "constantly" repaired the fence, new holes, cut by children using pliers, would almost immediately appear upon completion of the repairs.
Passaic's answers to plaintiffs' written demand for admissions were read into the record. Therein it admitted that prior to the accident it had actual knowledge that large holes in the fence surrounding the former tennis court area were used as passageways by school children and others; that links of the fence had become corroded, cut and jagged; and that the portion of the fence which was the situs of the accident had fallen into disrepair. In fact, so often did children cut new paths through the fence that, according to the testimony of the senior maintenance man employed by Passaic, a quarter of the fence was removed by him (although the stanchions remain) because "it just didn't pay to repair it any more." Admittedly, Passaic did nothing to discourage people from walking through holes in the fence; no signs were posted or other preventive steps taken.
Puckowitz testified that he, too, was aware of the holes and acknowledged that the condition of the fence needed improvement. Although the use of the holes in the fence by school children was considered a problem by him and the topic was discussed amongst the supervisory staff, no remedial action was taken. Inconsistent with his previous testimony, that he *366 did not know who owned the fence prior to Salvatore's injury, Puckowitz later stated that no such steps were initiated because the fence belonged to the city. Puckowitz testified that he had direct responsibility for the safety of the children.
Plaintiffs first contend that the court erred in dismissing defendant Puckowitz from the case. We agree. Our review of the record convinces us that plaintiffs' evidence properly presented a triable jury question on the issue of the school principal's negligence.
In this State the duty of school personnel to exercise reasonable supervisory care for the safety of students entrusted to them, and their accountability for injuries resulting from failure to discharge that duty, is firmly established. Jackson v. Hankinson and Bd. of Ed., New Shrewsbury, 51 N.J. 230, 235-236 (1968); Titus v. Lindberg, 49 N.J. 66, 73 (1967). This duty may be violated, not only in the commission of acts but also in a neglect or failure to act. Id. at 74. The standard of care imposed upon school personnel in carrying out this duty to supervise is that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances. Dailey v. Los Angeles Unified School District, 2 Cal.3d 741, 87 Cal. Rptr. 376, 470 P.2d 360, 363-364 (Sup. Ct. 1970).
Defendant Puckowitz concedes the validity of the foregoing principles but questions their applicability to the facts presented. He stresses that Salvatore was injured at a time when the duty to supervise had temporarily ceased and at a place where such duty did not extend. He further contends that even if such a duty exists, it was discharged by his actions in assigning school personnel to the playground during lunchtime and other similar precautions.
That Salvatore was injured off school property at a time when the school staff unilaterally decided that the necessity for supervision had dissipated are not facts which, in our view, materially distinguish this case from Titus. It *367 cannot be said as a matter of law, under the circumstances here presented, that Puckowitz' legal responsibility continued only for the first and last minutes of the lunch period but not in between, or that his supervisory duties extended only so far as the municipal boundary line and not beyond. See Titus v. Lindberg, supra, 49 N.J. at 75. Utilization of the tennis court area was such that for all practical purposes it formed an integral part of the school grounds to which the duty to supervise fairly extended. Independent of any duty owed by Passaic, Puckowitz owed a supervisory duty to students who were openly invited to make use of the playground area during the lunch recess to take reasonable precautions for their safety. Negligence is related to awareness of a recognizable risk of harm. Latzoni v. Garfield, 22 N.J. 84, 92 (1956); Harpell v. Public Service Coordinated Transport, 20 N.J. 309, 316 (1956). Thus, under the totality of the evidence adduced, a jury question was generated as to a breach of the duty owed by Puckowitz to his students.
By reason of the foregoing, the trial court's dismissal of the board must likewise be reversed since it is not disputed that defendant Puckowitz was acting within the scope of his employment, and in the event he is found liable to plaintiffs, the board would be obligated under N.J.S.A. 18A:16-6 to pay the judgment for him. See Titus v. Lindberg, supra, 49 N.J. at 79-80.
In their attack upon the dismissal below in favor of Passaic plaintiffs argue that the claimed immunity of N.J.S.A. 40:9-2, which became N.J.S.A. 40A:12-26 before it was finally repealed by N.J.S.A. 59:12-2, does not apply. The statute in question, N.J.S.A. 40:9-2, provided:
No municipality or county shall be liable for injury to the person from the use of any public grounds, buildings or structures, any law to the contrary notwithstanding.
We concur in plaintiffs' contention that Salvatore's injury cannot properly be said to arise from his use of any public *368 ground or structure within the purview of the statute. See Coleman v. Edison Tp., 95 N.J. Super. 600, 605 (App. Div. 1967). We find Fahey v. Jersey City, 52 N.J. 103 (1968), factually inapposite and accordingly hold that N.J.S.A. 40:9-2 does not bar plaintiffs' cause of action.
Passaic argues that even in the absence of the statute it would be immune from liability under the judicially-forged doctrine of general governmental tort immunity. We think that Passaic's liability is not thus limited.
Recently there has been a judicial shift toward frank recognition that municipal entities should justly be held accountable for injuries resulting from their tortious acts and omissions under ordinary principles of negligence, except, as a matter of policy, in situations involving so-called discretionary determinations. Jackson v. Hankinson and Bd. of Ed., New Shrewsbury, supra, 51 N.J. at 235. See also Willis v. Dept. of Conservation & Economic Development, 55 N.J. 534, 540-541 (1970). Applying this standard, we find ample basis in the evidence from which a jury could draw an inference of negligence, historically referred to in this context as active wrongdoing. See Jackson v. Hankinson and Bd. of Ed., New Shrewsbury, supra, 51 N.J. at 234-235; Hayden v. Curley, 34 N.J. 420, 424-427 (1961). The record indicates that Passaic had actual knowledge through its agents of the condition of disrepair of the fence and had made repairs, only to have new holes appear therein. Thus, plaintiffs are entitled to have a jury determine if there was affirmative negligence on Passaic's part in taking ineffectual steps to remedy a known defective condition on its property. See e.g., Taverna v. Hoboken, 43 N.J. Super. 160 (App. Div. 1956), certif. den. 23 N.J. 474 (1957). We do not perceive that the alleged negligence here involved consisted of that type of discretionary governmental policy determination which is immune from tort liability. See Elgin v. District of Columbia, 119 U.S. App. D.C. 116, 337 F.2d 152, 154-157 (D.C. Cir.1964). In this connection, it may be noted *369 that effective July 1, 1972 a municipal entity may be held liable for a defective condition on its property. N.J.S.A. 59:4-2.
The judgment of the Law Division ordering the dismissal of plaintiffs' action is reversed and the matter is remanded for a plenary trial as to all defendants on all issues in accordance herewith.