**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3638-16T1

L.E. and P.T.,

       Plaintiffs-Appellants,

v.

THE PLAINFIELD PUBLIC SCHOOL
DISTRICT, PLAINFIELD BOARD OF
EDUCATION, ANN NETTINGHAM,
ANGELA BENTO and ANNA
BELIN-PYLES,

       Defendants/Third Party
       Plaintiffs-Respondents,

v.

A.D.  and R.B.,

       Third Party Defendants.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **October 5, 2018** |
| **APPELLATE DIVISION** |

Submitted February 12, 2018 – Decided October 5, 2018

Before Judges Sabatino, Ostrer and Rose.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-2513-15.

Matthew Van Natten, attorney for appellants.

Nirenberg & Varano, LLP, attorneys for respondents (Howard M. Nirenberg, of counsel; Sandra N. Varano, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

Plaintiffs L.E. and her mother, P.T., allege that defendants, a school district and several of its employees, negligently supervised L.E. and two teenage male students on school grounds; failed to protect L.E. from a sexual assault; and failed to undertake an adequate investigation after L.E.'s delayed report. Plaintiffs allege that L.E. suffered psychological injury as a result. They appeal from the summary judgment dismissal of their complaint.

We conclude defendants owed L.E. a duty to exercise reasonable care in supervising her and fellow students during the school day; and plaintiffs' expert provided sufficient evidence for a jury to reasonably conclude that defendants failed to fulfill that duty. The court erred in determining that two provisions of the Tort Claims Act (TCA or Act) – N.J.S.A. 59:5-4, governing the failure to provide police protection services, and N.J.S.A. 59:3-5, governing the failure to enforce laws – shield defendants from liability for the negligent supervision of the students preceding the assault. However, we agree with the trial court that plaintiffs failed to establish a reasonable standard of care governing the appropriate response to L.E.'s report of the assault, or

that she suffered any harm from the alleged shortcomings in the post-assault investigation.

Therefore, we reverse in part, and affirm in part, the trial court's order granting summary judgment.

I.

We view the facts in the light most favorable to plaintiffs. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995). June 23, 2011, was the last day of L.E.'s high school freshman year. She was on the playground for a scheduled gym class, but most students had "skipped" that day. The boys' and girls' gym classes were combined, but there was no real instruction. L.E. testified, "We didn't really have a class. Nobody came. We're just, it was like a free day." She said no teachers or security guards were present on the playground.

Two male students, A.D. and R.B., approached her on the playground. She knew them from her classes. She once had a crush on A.D., but recently he had been bullying her. He offered to reconcile.

While the class was technically still in session, L.E. left the playground and entered the school building on the way to the bathroom. The boys left too, and the three entered the school building. None of them had hall passes,

notwithstanding that the school required them when students used the hallways during class.

L.E. reached the girls' bathroom, which was across the hallway from the boys' bathroom. R.B. asked L.E. to enter the boys' bathroom and she consented. L.E. alleged that once inside the boys' bathroom, an unwanted sexual encounter took place with both boys, which escalated with one of them, as the other watched. When another student entered the boys' bathroom, L.E. ran out.

In December the following school year, L.E. reported the incident to a guidance counselor and a basketball coach. She did so after she overheard R.B. boasting about the incident to fellow classmates. L.E. also told her mother. The principal and school superintendent were soon involved, as were local police and the Division of Youth and Family Services, as it was known at the time. No criminal charges were brought. Shortly after her report, L.E. left school and was hospitalized for extended periods due to mental illness. Plaintiff contends the assault triggered and exacerbated her condition.

Plaintiffs retained an expert in school security and safety. The expert visited the school in 2016. He noted that the school maintained a closed circuit television (CCTV) system of sixteen cameras that could be monitored from the school's front desk, including one camera with a view of the boys'

bathroom where the expert believed the assault occurred.[1] The school also maintained locks restricting access to the school building.

Citing both the school's own policy and "school security best practices," the expert opined that "students should be supervised at all times during regular school hours" and hall passes should be required for students traveling within a building during class sessions. He also opined that controlling access to school buildings "is critical to providing a safe and secur[e] school environment." The expert opined that defendants failed to implement a hall-pass system, failed to control access to the building, and failed to supervise L.E., A.D. and R.B. on the date of the incident.

After discovery, the trial court granted defendants' motion for summary judgment. In an oral opinion, the trial court found defendants were immune under the TCA. The court invoked N.J.S.A. 59:5-4, which provides public entities and employees immunity for "failure to provide police protection services," and "failure to provide sufficient police protection service." The court also relied on N.J.S.A. 59:3-5, which provides immunity to public employees for injuries "caused . . . by his [or her] failure to enforce any law." See also N.J.S.A. 59:2-4 (extending similar immunity to public entities). The

_____

[1] Based on the date of his visit to the school, the expert acknowledged that he did not know whether the system was in place or operational when the assault occurred.

court rejected plaintiffs' negligent supervision claim, which it found unsupported by the expert's opinion. The judge stated:

> So plaintiffs argue that the defendants did not reasonably supervise the students. They point to the parts of the expert report noting the various failures that are alleged . . . : failure to supervise, failure to have hall passes, not having somebody on the playground. But basically it boils down to a lack of security or a lack of supervision. And if it's a lack of security . . . the Tort Claims Act provides a defense. And if it's a lack of supervision, there's no expert for that. The policeman[2] is not an expert on what is appropriate supervision for 15-year-olds in a high school.

The court also questioned whether plaintiffs could prove causation.

> And I guess what's alleged here is that they did not act to . . . give hall passes, have one police person on campus or have somebody everywhere at every point in time to make sure that girls are not entering the boys bathroom. . . . And there's a lot of assumptions to be made that if somebody was there, . . . that person would have stopped her. It's really left a lot to speculation.

However, the court ultimately concluded that plaintiffs' negligent supervision claim was, at bottom, a claim of inadequate security. "Plaintiffs here have not raised any facts outside of lack of security at school which

---

2  The court referred thereby to plaintiffs' expert, who was a former police detective and municipal police commissioner. After his policing career, the expert served lengthy stints as the security chief for two hospitals and a New Jersey university. He also reported experience managing the day-to-day security operations of educational programs serving K-12 students.

would subject defendants to liability." The court found that statutory immunity shielded defendants. "Mainly, the plaintiff is alleging . . . that defendants negligently supervised the three students, despite the fact that even if this were true, it would be irrelevant in light of the applicability of the police protection and the failure to enforce immunities."

The trial court also dismissed plaintiffs' claim that defendants failed to conduct an appropriate investigation of L.E.'s allegation. After reviewing the various steps that the individual defendants took, the court relied on plaintiffs' failure to present any evidence or expert opinion to establish a standard of care for the appropriate response to L.E.'s report. The court concluded that plaintiffs failed to demonstrate how any shortcomings in the individual defendants' response caused L.E. injury.

On appeal, plaintiffs contend the trial court misapplied the TCA. They argue that their claim pertains to negligent supervision, not inadequate police protection or failure to enforce laws. They also contend the trial judge inappropriately relied on facts pertaining to L.E. and P.T., which the judge learned while presiding over a Family Part matter involving them.

## II.

Exercising de novo review, see Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010), we conclude the trial court erred in dismissing plaintiffs' negligent supervision claim.

We turn first to the TCA. The Act establishes the general principal of sovereign immunity, which is subject to exceptions, and specific grants of immunity. The Act provides, "Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J.S.A. 59:2-1. But, the Act states generally that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a); see also Margolis and Novack, Claims Against Public Entities, 1972 Task Force Comment to N.J.S.A. 59:2-2 (2018) (stating the subsection is "[t]he primary source of public entity liability"). Similarly, "[e]xcept as otherwise provided by this act, a public employee is liable for injury caused by his [or her] act or omission to the same extent as a private person." N.J.S.A. 59:3-1(a).

Notwithstanding these general provisions, defendants seek protection under the specific immunities granted by N.J.S.A. 59:5-4 and N.J.S.A. 59:3-5.

They bear the burden to plead and prove immunity. Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 582 (2009).

N.J.S.A. 59:5-4 "precludes suit against municipalities and their responsible officers based upon contentions that damage occurred from the absence of a police force or from the presence of an inadequate one." Sczyrek v. Cty. of Essex, 324 N.J. Super. 235, 241 (App. Div. 1999) (quoting Suarez v. Dosky, 171 N.J. Super. 1, 9 (App. Div. 1979)). The immunity provision "protect[s] 'the public entity's essential right and power to allocate its resources'" and "determine with impunity whether to provide police protection service and, if provided, to what extent." Ibid. (quoting Rodriguez v. N.J. Sports & Exposition Auth., 193 N.J. Super. 39, 43 (App. Div. 1983)).

We disagree with the trial court's view that plaintiffs' claim relates to a failure to provide police protection, or to enforce laws. Plaintiffs alleged in their complaint that defendants violated a duty when they "failed to properly supervise, attend to, care for and otherwise provide for the safety of . . . [L.E.]" and they "failed to properly supervise, attend to, patrol, monitor, control and regulate the conduct and behavior of [A.D.] and [R.B.] who were other students either entrusted to their care or over whom they have supervisory responsibilities." Plaintiffs did not ground their claim on a "failure to provide

police protection service," N.J.S.A. 59:5-4, or a "failure to enforce any law," N.J.S.A. 59:3-5.

The trial court and defendants misplace reliance on Setrin v. Glassboro State College, 136 N.J. Super. 329 (App Div. 1975), which involved a claim by a person stabbed on college property after leaving a basketball game. The plaintiff did not ground his claim on negligent supervision. See id. at 332. Rather, he claimed that prior incidents of racial unrest created a "dangerous condition" that rendered the defendants liable under the proviso of N.J.S.A. 59:2-7, which states, "A public entity is not liable for failure to provide supervision of public recreational facilities; provided, however, that nothing in this section shall exonerate a public entity from liability for failure to protect a dangerous condition . . . ." (emphasis added).

We held that "the mere presence on the property of a person with criminal intent or purpose" was not a dangerous condition that would impose liability on the school. Setrin, 136 N.J. Super. at 333. In passing, we stated that the plaintiff's claim amounted to a claim of insufficient police protection, which was barred by N.J.S.A. 59:2-7. Id. at 335. We simply did not address the interplay between a negligent supervision claim and N.J.S.A. 59:5-4 or N.J.S.A. 59:3-5.

A-3638-16T1

The other reported police-protection cases upon which defendants rely extend N.J.S.A. 59:5-4 to claims involving security arrangements and the adequacy of privately retained security officers; but they do not justify immunizing school staff's failure to supervise interactions among students on school grounds during the school day. See Sczyrek, 324 N.J. Super. at 241-42 (finding immunity for allegedly inadequate security plan in courthouse, which failed to prevent entry and murder by armed person); Rodriguez, 193 N.J. Super. at 42 (finding immunity for failure to provide sufficient private security protection services to prevent robbery on racetrack parking lot).

The policy underlying N.J.S.A. 59:5-4 is to shield a public entity's discretionary decisions regarding how to allocate and direct scarce police resources. Suarez, 171 N.J. Super. at 9. Plaintiffs do not question the allocation of police or security personnel, nor do they contend defendants provided an inadequate police presence in the school. Plaintiffs' claim relates to the separate duty of a school and its staff to exercise reasonable care in supervising children entrusted to them. Plaintiffs assert that L.E. was injured by fellow students whom defendants failed to supervise. Their expert addresses the failure to issue hall passes, the absence of teachers or other staff on the playground during the class hour, and the students' unfettered access to

11

the school building during class hour. These failures do not involve inadequate police protection.

Courts in other jurisdictions have likewise distinguished between police-protection immunity and educators' duty to supervise and assure the safety of students. See Peterson v. San Francisco Cmty. Coll. Dist., 685 P.2d 1193, 1202 (Cal. 1984) (concluding that a provision comparable to N.J.S.A. 59:5-4 did not immunize college from claims that it failed to warn student of danger, or failed to take other steps to prevent assault); Moore ex rel. Knight v. Wood Cty. Bd. of Educ., 489 S.E.2d 1, 5 (W. Va. 1997) ("A county school board's policy regarding supervision of students on school grounds is [not] police . . . protection, and the immunity cited . . . does not therefore apply.")

Defendants also mischaracterize plaintiffs' claim as one alleging a failure to enforce the law against sexual assault. Defendants cite Bombace v. City of Newark, 125 N.J. 361 (1991), which addressed the immunity for failure to enforce a law. The Court held that the defendants were entitled to summary judgment on plaintiffs' complaint that a fatal apartment fire caused by a stove or portable heater could have been prevented had the City enforced laws requiring adequate heating and smoke detectors. Id. at 373-74. The Court noted that the immunity under N.J.S.A. 59:3-5 and N.J.S.A. 59:2-4 addresses "the government's failure to act or non-action" where there is usually "a

12

principal wrongdoer from whom to seek redress." Id. at 372. The immunity recognizes that the government cannot "do everything that might be done." Id. at 372 (quoting N.J.S.A. 59:1-2). By contrast, plaintiffs focus not on the failure to act in the form of the non-enforcement of laws, but on the negligent discharge of the supervisory function that the school had already assumed when students were attending class.

Our courts have consistently held that school officials have a duty to supervise the children in their care. See, e.g., Jerkins v. Anderson, 191 N.J. 285, 296 (2007) (stating that "[s]chool officials have a general duty 'to exercise reasonable supervisory care for the safety of students entrusted to them, and [are accountable] for injuries resulting from failure to discharge that duty'") (quoting Caltavuturo v. City of Passaic, 124 N.J. Super. 361, 366 (App. Div. 1973) (alteration in original)); Frugis v. Bracigliano, 177 N.J. 250, 268-70 (2003) (stating school officials' duty of care "extends to supervisory care" of their students). We have recognized that "[t]eachers must at times be present to oversee students on school playgrounds and in hallways, classrooms, lunchrooms and auditoriums." Kibler v. Roxbury Bd. of Educ., 392 N.J. Super. 45, 55 (App. Div. 2007). The duty may be violated by nonfeasance, as well as misfeasance. Titus v. Lindberg, 49 N.J. 66, 74 (1967); Caltavuturo, 124 N.J. Super. at 366.

"The theory behind the duty is that the relationship between the child and school authorities is not a voluntary one but is compelled by law." Frugis, 177 N.J. at 270. Because "[t]he child must attend school and is subject to school rules and discipline," school officials "are obligated to take reasonable precautions for [the child's] safety and well-being." Ibid.

The supervisory duty extends to "foreseeable dangers . . . [that] arise from the careless acts or intentional transgressions of others." Id. at 268; see also L.W. ex rel L.G. v. Toms River Reg'l Sch. Bd. of Educ., 189 N.J. 381, 406 (2007). In Frugis, the Court held that the supervisory duty extended to protect students from the transgressions of an adult – a school principal who privately photographed students in inappropriate poses. 177 N.J. at 268. In L.W., the Court applied the supervisory duty to a case of student-on-student harassment. 189 N.J. at 406-07. In Titus, the Court affirmed a jury verdict finding a principal liable for negligent supervision of a student who shot a paper clip at another student, injuring him. 49 N.J. at 75-76; see also Longo v. Santoro, 195 N.J. Super. 507 (App. Div. 1984) (reversing summary judgment for the school board and principal whom the plaintiff claimed negligently assigned supervisory personnel, who failed to prevent one student from striking another with a rock); Kibler, 392 N.J. Super. at 55 (noting, in reference to teachers'

supervisory responsibilities, that "there is invariably the prospect that a student-on-student altercation will erupt").

Consistent with this authority, we conclude that school personnel's supervisory responsibilities may extend to the prevention of unwanted sexual encounters between students. Although we have found no New Jersey case addressing that form of student-upon-student assault, persuasive out-of-state decisions have found liability in such cases. See J.H. v. Los Angeles Unified Sch. Dist., 107 Cal. Rptr. 3d 182, 196 (Ct. App. 2010) (finding student who was sexually assaulted during a voluntary, school-sponsored after-school program had "a right to reasonable protection"); M.W. v. Panama Buena Vista Union Sch. Dist., 1 Cal. Rptr. 3d 673, 675 (Ct. App. 2003) (recognizing a duty of supervision where an eighth-grade special education student was sexually assaulted by another student in the school bathroom before classes began); Collins v. Sch. Bd. of Broward Cty., 471 So. 2d 560, 564 (Fla. Dist. Ct. App. 1985) (holding that a teacher and school board "owed a duty to use reasonable care in supervising" a class in which an emotionally handicapped student was sexually assaulted); Doe v. Dep't of Educ. of City of New York, 862 N.Y.S.2d 598, 599-600 (App. Div. 2008) (holding that a school could be liable for negligent supervision of students if an alleged sexual assault against the plaintiff on school grounds was foreseeable); Doe by Roe v. Orangeburg Cty.

Sch. Dist., 495 S.E.2d 230, 232 (S.C. Ct. App. 1997) (finding, in a student-on-student sexual assault case, that a jury could conclude the school acted with gross negligence by leaving a class of students unsupervised for fifteen minutes).

School officials must exercise "that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances." Caltavuturo, 124 N.J. Super. at 366. In Frugis, plaintiffs proceeded on the theory that the school board had not implemented proper procedures for school officials to report a principal's inappropriate behavior toward students. 177 N.J. at 270. In L.W., the Court acknowledged that "[a] school cannot be expected to shelter students from all instances of peer harassment" but "reasonable measures are required to protect our youth, a duty that schools are more than capable of performing." 189 N.J. at 406.[3]

In addition to establishing a duty of care, plaintiffs must prove a breach of the duty, actual and proximate causation, and damages. See Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013) (setting forth four requisites of negligence action). There was sufficient evidence that school officials breached their duty. L.E. asserted there was no instruction or

---

[3] The parties have not cited to us, nor have we found, any State regulations or Department of Education guidelines or standards addressing the level of supervision that a high school should maintain over its students.

supervision during the gym class period. The boys and girls mixed freely on the playground, so A.D. and R.B. were free to approach L.E. The three were also able to leave the playground together during the class period, without securing hall passes or the express permission of a staff-person. They freely entered the school building and proceeded to the hallway. They avoided observation of school staff, despite the presence of a CCTV camera trained on the area (assuming it was in place in 2011).

Plaintiffs' expert opined that reasonable measures to prevent student-on-student assault, as occurred here, included enforcing a system of hall passes, maintaining supervision of students in class and elsewhere, and preventing free entry into the school building. The expert also noted that the surveillance system he observed in 2016 covered the hallway where L.E. entered the boys' bathroom; yet, there is no evidence that a staff-person monitored the area, spotted L.E. or attempted to intervene.[4]

---

[4] We conclude the court mistakenly rejected the qualifications of plaintiffs' expert to opine about "what is appropriate supervision for 15-year-olds in a high school." Our courts "take a liberal approach when assessing a person's qualifications." State v. Jenewicz, 193 N.J. 440, 454 (2008) (reversing exclusion of expert). Although the decision to qualify an expert under N.J.R.E. 702 is vested in the trial court's discretion, State v. Torres, 183 N.J. 554, 572 (2005), "[a]n appellate court can . . . discern an abuse of discretion when the trial court fails to take into consideration all relevant factors . . . ." State v. S.N., 231 N.J. 497, 515 (2018) (quoting State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017)). The trial court did not address the expert's

(continued)

We also decline to follow the trial court's view of proximate causation. "Ordinarily these questions of proximate and intervening cause are left to the jury for its factual determination." Titus, 49 N.J. at 76 (quoting Rappaport v. Nichols, 31 N.J. 188, 203 (1959)); see also Perez v. Wyeth Labs, Inc., 161 N.J. 1, 27 (1999). This is not a case where "no reasonable jury could find that the plaintiff's injuries were proximately caused" by defendants' alleged negligence. See Vega by Muniz v. Piedilato, 154 N.J. 496, 509 (1998). In Titus, the Court rejected the school principal's argument that, even assuming "a lack of due supervision," the assailant's intentional conduct was the sole cause of the victim's injury, breaking the causative chain. 49 N.J. at 76. "The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability." Ibid. A jury could reasonably find that the risk of sexual misbehavior among high school teenagers was foreseeable.

The trial court considered it speculative that enforcement of a hall-pass system could have prevented the assault. Yet, a jury may reasonably conclude that the presence of teachers would have had a deterrent effect. Id. at 75 ("'The mere presence of the hand of authority and discipline normally is

(continued)
significant employment and academic experience, after his policing career, in the area of school security and safety.

18                                                          A-3638-16T1

effective'" to deter misbehavior) (quoting <u>Ohman v. Bd. of Educ.</u>, 90 N.E.2d 474, 478 (N.Y. 1949)).  A jury could find that a teacher exercising reasonable care would not have permitted L.E. and both boys to take a bathroom break at the same time, in the middle of a class period, and enter the apparently empty building together.  Also, if the students had been engaged in regular class activities, as opposed to enjoying a "free day" on the playground during class time, their initial interaction on the playground may have been prevented.  Had school staff monitored the hallway – personally or through the CCTV system if operational – they may have prevented or quickly responded to L.E.'s entry into the boys' bathroom.  Although a finding of proximate causation is far from certain, a jury could reasonably find that defendants' negligent supervision was a proximate cause of the injury.

Although we reverse the trial court's dismissal of plaintiffs' negligent supervision claim, we agree with the trial court's assessment of their claim that defendants inadequately responded to L.E.'s report of the assault.  Plaintiffs failed to present sufficient evidence on the standard of care or in establishing that any shortcoming in defendants' response caused or exacerbated L.E.'s injury.  Any further discussion on that point is not warranted.  <u>See</u> <u>R.</u> 2:11-3(e)(1)(E).

Finally, we need not address in any detail the issue of the trial judge's reference to facts of which she became aware in a separate Family Part proceeding but which were not of record on the summary judgment motion. The facts had no discernible impact on the court's decision, nor do they affect the disposition we reach here.

Reversed in part; affirmed in part; and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION