**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2095-17T2

D.B., an infant minor by his
Guardian ad litem, C.B., and
C.B., individually,

     Plaintiffs-Appellants,

v.

JERSEY CITY BOARD OF EDUCATION,
JACKSON GRAY, individually,
SHANNON SPEED, individually,
DAWN REYNOLDS, individually, and
TYRONE BATES, individually,

     Defendants-Respondents.

_____

        Submitted November 7, 2018 – Decided December 7, 2018

        Before Judges Fisher and Firko.

        On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3334-16.

        Krumholz Dillon, PA, attorneys for appellants (Alan L. Krumholz, on the brief).

Adams, Gutierrez & Lattiboudere, LLC, attorneys for respondents (Cherie L. Adams, of counsel and on the brief; Kimberly Williams, on the brief).

PER CURIAM

C.B.[1] appeals the dismissal of her complaint with prejudice under Rule 4:6-2(e) on behalf of herself and her minor son D.B., against defendants: Jersey City Board of Education, Jackson Gray, Shannon Speed, Dawn Reynolds, and Tyrone Bates. We affirm the order dismissing the complaint but remand to allow plaintiffs leave to file and serve an amended complaint.

I.

The following facts are alleged in the complaint, plaintiffs' answers to interrogatories, and response to a notice to produce. D.B., born in June 2007, was a third-grade student at Jersey City Public School #39. During the 2015-2016 academic year, C.B. contends that her son was "subjected to bullying, harassment and discriminatory treatment" by defendants. In October 2015, Speed and Gray, who are teachers, refused to allow D.B. to participate in a field trip to the sanitation department and other field trips, according to C.B. Arguably, her son was prohibited from participating in the school's Halloween

---

[1] Pursuant to Rule 1:38-3(d), we use initials to protect the confidentiality of the plaintiffs.

festivities and had to remain in the classroom.  A few months later, in January 2016, D.B. claimed that Speed "apparently became annoyed with [D.B.] and dumped out all of [his] books from his book bag and onto his desk," causing the child to cry.  A month later, Speed and Gray allegedly accused D.B. of damaging a textbook and confiscated it from him, advising him to use the online version instead.  The next day, he was given a replacement textbook after online access was unsuccessful.  Defendants forbade him from attending another field trip in February 2016 for "being obstinate," and he was removed from the classroom by a security guard after refusing to separate from his peers.  Allegedly, D.B. was "shoved" by the security guard, and the child's desk was separated from the other students' desks.

Throughout the year, C.B. contends that her son got detention for failing to timely complete homework assignments, and he was deprived of lunch as part of his punishment.  After falling asleep at his desk in March 2016 for about forty-five minutes, Gray took a picture of D.B. and emailed it to his mother, Reynolds, the principal, and Bates, the vice-principal, without inquiring as to whether the child felt ill.  He also failed to wake D.B. up, according to C.B.'s interrogatory answers.

A-2095-17T2

During an oral hygiene demonstration in April 2016, D.B.'s gums bled. Gray purportedly announced to the class that D.B. had "gingivitis," causing the child to feel "embarrassed and humiliated." That month, Speed and Gray ostensibly told D.B. he "was going to be homeless," and that they would "give him a cup so that he could stand outside the school, or go to Journal Square, and people would put money in his cup." Also in April 2016, C.B. alleges that Speed and Gray refused to provide D.B. with a suitable pencil during the Scantron test,[2] and he had to complete the test with a highlighter. After his teacher claimed he vandalized his test, D.B. retook the test in Bates' office. After further miscreant behavior by Speed and Grey was complained of by C.B. to Reynolds, Bates, and the Division of Child Protection and Permanency,[3] her son was transferred to Public School #17, where he has been on the honor roll and has perfect attendance.

Count one of the complaint sought a judgment against defendants under the Anti-Bullying Act (Act), N.J.S.A. 18A:37-18 and 17-46. Count two sought

---

[2] Scranton tests require the test taker to use a standard number two pencil in order for a machine to scan the answers.

[3] No formal action was ever taken.

A-2095-17T2

a judgment against defendants for age discrimination under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -49.

The parties engaged in limited paper discovery. Defendants then moved to dismiss the complaint, contending that the Act does not create a private cause of action, and that the Legislature vested the Commissioner of the Department of Education with the authority to decide disputes arising under Title 18A, dealing with school laws. Because plaintiffs' claim was based upon general assertions of harassment, intimidation, and bullying, defendants argued that plaintiffs failed to allege a claim under the Act in any respect.

As to the NJLAD claim, defendants relied on the language that provides it is unlawful "[f]or an employer, because of the . . . age . . . of any individual . . . to discriminate against such individual . . . in terms, conditions or privileges of employment." N.J.S.A. 10:5-12(a). Because no case law supports a cause of action for age discrimination in a public school setting for a minor student, and plaintiffs failed to show a prima facie claim that he was treated differently from his fellow classmates, defendants argued there was no NJLAD violation.

Plaintiffs relied upon the Jersey City Public Schools' Code of Conduct as well as the legislative findings and declarations of the Act to assert there is concurrent jurisdiction between the Superior Court and Commissioner of

Education in the handling of claims brought under the Act. As to the allegation of age discrimination, plaintiffs admitted it is "unconventional," however, they argued that the complained of conduct would not have occurred but for the fact a minor was involved, citing T.L. v. Toys 'R' Us, Inc., 255 N.J. Super. 616 (App. Div. 1992).

The motion judge dismissed both counts of the complaint with prejudice under Rule 4:6-2(e). As to the first count, he found there is no private right of action under the Act, N.J.S.A. 18A:37-13. The judge held that "complaints for violations of any of the provisions of the Act are to go through a formal procedure to be outlined by the Commissioner of Education. N.J.S.A. 18A:37-25."

As to the second count, the judge determined the "complaint does not provide any facts which could reasonably somehow implicate age as a factor[,]" and that plaintiffs were advancing a "novel theory." The judge also found that plaintiffs' proffer that "the allegedly discriminatory conduct was enabled by [D.B.'s] age, and that alone is insufficient to support a claim under the [NJ]LAD" and "[n]o support [was] cited for such a proposition."

After the order was entered on October 27, 2017, plaintiffs filed a motion for reconsideration. On December 1, 2017, the judge denied the motion because

6

plaintiffs "failed to show that [the] decision was irrational or palpably incorrect." However, the judge inadvertently failed to strike the second ordinal paragraph in the form of the order submitted by plaintiffs' counsel that provided: "the [c]omplaint filed in the within matter be and is reinstated, with plaintiff[s] being entitled to move to [a]mend the [c]omplaint within ten (10) days from the date of this [o]rder." In reliance upon that language, plaintiffs moved to file and serve an amended complaint to assert causes of action based upon negligence, aiding and abetting illegal discrimination, negligence under Title 18A, and gender discrimination. In an order entered on January 5, 2018, denying the motion, the judge stated:

> Plaintiff[s] filed the instant motion, essentially relying on the [c]ourt's error in not striking a paragraph submitted as part of [p]laintiff[s'] proposed form of order reinstating [p]laintiff[s'] case and permitting [p]laintiff[s] to file an amended complaint. Nevertheless, it is clear that reconsideration was [denied] and the [c]ourt gave its reasons for doing so. For those reasons, the motion to file an amended complaint is denied.

Plaintiffs appeal, arguing the following:

POINT I:

PLAINTIFFS' ALLEGATIONS OF BULLYING, HARRASSMENT AND DISCRIMINATION AGAINST A MINOR STUDENT BY PUBLIC SCHOOL TEACHERS AND STAFF SET FORTH A

7

CAUSE OF ACTION WHICH ENTITLED PLAINTIFFS TO PRESENT THEIR CASE IN A COURT OF LAW.

Defendants urge us to affirm.

II.

"We review a grant of a motion to dismiss a complaint for failure to state a cause of action de novo, applying the same standard under Rule 4:6-2(e) that governed the motion court." Wreden v. Township of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014). We must adhere to that standard of review.

We are "limited to examining the legal sufficiency of the facts alleged on the face of the complaint . . . ." Nostrame v. Santiago, 213 N.J. 109, 127 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). The test to be applied is "whether a cause of action is 'suggested' by the facts." Printing Mart, 116 N.J. at 746 (citation omitted). "[A] reviewing court 'searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Ibid. (citation omitted). "[P]laintiffs are entitled to every reasonable inference of fact," and our examination of the complaint should be one "that is at once painstaking and undertaken with a generous and hospitable approach." Ibid.

Thus, a motion to dismiss under <u>Rule</u> 4:6-2(e) "must be based on the pleadings themselves." <u>Roa v. Roa</u>, 200 N.J. 555, 562 (2010). For purposes of such a motion, the complaint includes the "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." <u>Banco Popular N. Am. v. Gandi</u>, 184 N.J. 161, 183 (2005) (quoting <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 221 n.3 (3d Cir. 2004)). However,

> [i]f . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by <u>R[ule]</u> 4:46, and all parties shall be given reasonable opportunity to present all material pertinent to such a motion.
>
> [<u>R.</u> 4:6-2.]

The judge expressly looked outside the pleadings and went beyond the four corners of the complaint when it considered plaintiffs' discovery responses. The judge expressly found dismissal was "mandated" because "the factual allegations are palpably insufficient to support a claim upon which relief can be granted[,]" citing <u>Rieder v. The State of New Jersey Dep't of Transp.</u>, 221 N.J. Super. 547, 552 (App. Div. 1987). That said, because the judge dismissed plaintiffs' complaint pursuant to <u>Rule</u> 4:6-2(e), we consider whether the complaint is capable of withstanding dismissal pursuant to a proper application of that rule.

9

## III.

We first address the jurisdictional issue applicable to the Act, which was intended "to strengthen the standards and procedures for preventing, reporting, investigating, and responding to incidents of harassment, intimidation, and bullying of students that occur in school and off school premises[.]" N.J.S.A. 18A:37-13.1(f). The goal of the Act is to reduce "the risk of suicide among students and avert not only the needless loss of a young life, but also the tragedy that such loss represents to the student's family and community at large[.]" N.J.S.A. 18A:37-13.1(i). Upon the Act becoming effective on September 1, 2011, school officials were instructed to implement safeguards, including: the appointment of an anti-bullying specialist or coordinator; the formation of a school safety team; required training on harassment, intimidation, and bullying prevention in order to receive a teaching or supervisory certification; and development of a guidance document to assist in resolving complaints. N.J.S.A. 18A:37-20 to -24.

There is a compelling reason to affirm dismissal of count one. Our Legislature has enacted an extensive scheme for enforcement of our public education laws. N.J.S.A. 18A:6-9 provides that "[t]he commissioner shall have jurisdiction to hear and determine . . . all controversies and disputes arising

10

under the school laws . . . ." Chapter 37 of Title 18A, in turn, provides a comprehensive scheme for the discipline of children attending public schools. This includes a non-exhaustive list of the grounds for suspending or expelling a student, N.J.S.A. 18A:37-2; procedures for discipline involving assaultive conduct by a student, N.J.S.A. 18A:37-2.1 to -2.5; procedures for the immediate suspension of a student, N.J.S.A. 18A:37-4; procedures for disciplinary action against students found with firearms, N.J.S.A. 18A:37-7 to -12; and procedures for disciplinary action based upon "bullying." N.J.S.A. 18A:37-13 to -15.

In a previous decision, we addressed the jurisdictional issue after enactment of the Act holding that "[t]he Commissioner of Education has primary jurisdiction to hear and determine all controversies arising under the school laws." G.D.M. v. Board of Educ. of the Ramapo Indian Hills Reg'l High Sch. Dist., 427 N.J. Super. 246, 259 (App. Div. 2012) (citation omitted). In G.D.M., we held that the Act "allows a school district to respond to harassment, intimidation or bullying that occurs off school grounds[,]" recognizing the broad remedial intent of the statute. Id. at 266. Since plaintiffs' allegations fall squarely under the Act, the judge's analysis was correct and we agree that count one should be dismissed because the Commissioner has jurisdiction to hear and determine the controversy.

IV.

Turning now to the dismissal of plaintiffs' NJLAD claim in count two, we recognize that in order to establish a prima facie age discrimination case, a plaintiff must satisfy the four-prong test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1971), which has been adopted by our Court. Viscik v. Equip. Co., 173 N.J. 1, 13-14 (2002); Goodman v. London Metal Exch. Inc., 86 N.J. 19, 31 (1981); Peper v. Princeton Univ. Bd. of Tr., 77 N.J. 55, 82 (1978).

A cause of action has been recognized under the NJLAD in the educational context "against a school district for a student-on-student harassment . . . ." L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ., 189 N.J. 381, 402 (2007). In order to state a claim under the NJLAD against a school,

> an aggrieved student must allege discriminatory conduct that would not have occurred "but for" the student's protected characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment, and that the school district failed to reasonably address such conduct.
>
> [Id. at 402-03.]

"Common sense dictates that there is no [NJ]LAD violation if the same conduct would have occurred regardless of plaintiff's [age]." Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 604 (1993).

12

Plaintiffs reference several pre-Act cases to establish support for their position that schools are liable to harm faced by their students.[4] These cases, however, are based upon negligence theories and not claims arising under the NJLAD. Plaintiffs argue:

> [i]t would seem to follow that actions conducted _intentionally_ by teachers and staff against a student, which are or may be deemed to constitute acts of intimidation, harassment, or bullying, should be subject to liability at least equal to those acts conducted negligently which result in injury to a student.
>
> [(emphasis in original).]

We disagree because L.W. rejected the United States Supreme Court's "deliberate indifference" standard required for Title IX claims established by Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 641 (1999), and instead chose to adopt the Lehmann standard. L.W., 189 N.J. at 404, 405. The Court held that

---

[4] D.B. relies on Titus v. Lindberg, 49 N.J. 66 (1967) (holding that the school was liable for injuries sustained by a student, which were inflicted by another student while the children were unsupervised); Jackson v. Hankinson, 51 N.J. 230 (1968) (upholding a duty of care to exercise "reasonable supervisory care" for a student injured on a school bus by another student, recognizing "ordinary principles of negligence"); and Caltavuturo v. City of Passaic, 124 N.J. Super. 361 (App. Div. 1973) (upholding the standard of care for a student injured by stepping through a chain-link fence partially surrounding a public school). We are not persuaded by these cases because they deal with imposition of duty and standard of care on school personnel that is not germane to our analysis here.

13

"a school district is liable for such harassment when the school district knew or should have known of the harassment but failed to take any actions reasonably calculated to end the mistreatment and offensive conduct." Id. at 390.

In support of this position, plaintiffs argue that Remphrey v. Cherry Hill Twp. Bd. of Educ., No. 16-3084, 2017 U.S. Dist. LEXIS 7882 (D.N.J. Jan. 20, 2017) is controlling. In Remphrey, the student's NJLAD complaint survived defendant's motion to dismiss because it outlined the student's symptoms and reaction to a teacher's behavior; that the school failed to reasonably address the student's complaints; violated its own protocols; and failed to fully investigate the matter. We are cognizant of the holding in D.V. v. Pennsauken Sch. Dist., 247 F. Supp. 3d 464 (D.N.J. 2017), that permitted an aggrieved student have her NJLAD claim considered on its merits. In this case, count two was not dismissed because the judge found that there is no remedy under NJLAD, but because plaintiffs failed to state any facts to support that the treatment D.B. received was due to his young age.

We find no basis for liability on defendants' part under the NJLAD. Accordingly, dismissal of count two of the complaint was appropriate.

Finally, we address the denial of plaintiffs' request for leave to amend their complaint. When, as here, amendment is sought after an answer has been

A-2095-17T2

filed, plaintiffs must obtain "leave of court which shall be freely given in the interest of justice." R. 4:9-1.

"'Rule 4:9-1 requires that motions for leave to amend be granted liberally' and that 'the granting of a motion to file an amended complaint always rests in the court's sound discretion.'" Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) (citation omitted). Here, the judge abused his discretion by denying plaintiffs' motion for leave to file and serve an amended complaint because substantive changes and different causes of action are alleged. Further, the judge did not find that the proposed counts were not sustainable as a matter of law as he was required to do. Ibid. Therefore, we reverse the January 5, 2018 order insofar as it denied plaintiffs' motion for leave to file and serve an amended complaint and we remand to permit plaintiffs an opportunity to re-file same. We vacate the orders under review and remand for entry of an order that dismisses the second count without prejudice and allows plaintiffs an opportunity to file an amended complaint under the NJLAD.

Plaintiffs' remaining arguments were either not made to the judge or lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). For all the reasons previously expressed, we remand the matter to the trial court to permit plaintiffs leave to file and serve an amended complaint.

A-2095-17T2

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2095-17T2