**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4573-18T2

YANNI PATSAROS, Individually
and KELLI PATSAROS and
GEORGE PATSAROS, Individually
and as Parents of YANNI PATSAROS,

     Plaintiffs-Appellants,

v.

GREATER EGG HARBOR REGIONAL
HIGH SCHOOL DISTRICT and/or
ABSEGAMI HIGH SCHOOL and/or
SHAWN SCANNELL and/or ANDREW
BERGMAN and/or ZACH HAMMOND,
jointly, severally, individually and/or
in the alternative,

     Defendants-Respondents,

and

GALLOWAY TOWNSHIP BOARD OF
EDUCATION and/or ATLANTIC COUNTY
DEPARTMENT OF EDUCATION and/or
CHRIS HENCHY,

     Defendants.

Submitted August 25, 2020 – Decided September 16, 2020

Before Judges Alvarez and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0773-17.

Hasner and Hasner, PA, attorneys for appellants (Louis G. Hasner, of counsel and on the briefs; David L. Hasner, on the briefs).

Madden & Madden, PA, attorneys for respondents Greater Egg Harbor Regional High School District, Absegami High School, Shawn Scannell, and Zachary Hammond (Michael V. Madden and Regina M. Philipps, on the brief).

O'Brien & Ryan, LLP, attorneys for respondent Andrew Bergman (Melissa L. Mazur and Paul E. Peel, on the brief).

PER CURIAM

Plaintiffs Yanni Patsaros, Kelli Patsaros, George Patsaros, individually and as Parents of Yanni Patsaros, appeal from the June 7, 2019 summary judgment dismissal[1] of their complaint against defendants Greater Egg Harbor Regional High School District and/or Absegami High School and/or Shawn Scannell and/or Andrew Bergman and/or Zach Hammond. For the following reasons, we affirm.

---

[1] The judge filed an amplification of her initial decision a few days later pursuant to Rule 2:5-1(b).

On December 22, 2014, Yanni Patsaros (Yanni), then sixteen, was injured at wrestling practice at his high school when another participant accidentally stepped on his head. Yanni had wrestled recreationally since he was five years old.

The following facts are undisputed, inform our legal analysis, and were relied upon by the judge. No headgear was worn during the practice. Wrestling headgear, however, primarily protects from deformities of the ear, not concussions such as the one Yanni suffered as a result of the incident. Without specifics, plaintiffs allege the mats were too close together.[2] Yanni claims the coach, defendant Shawn Scannell, whispered to him that he should minimize the extent of his injury to his trainer. Regardless, Scannell immediately sent Yanni to the trainer, defendant Andrew Bergman, who barred him from practicing further that day. Bergman filled in a report about the incident. That night, Yanni's mother called Bergman, and it was agreed Yanni would be monitored and sit out practice the following day, December 24. Bergman performed "sideline tests" and kept Yanni from practice that day as well, recommending that he see a physician. While at an off-site practice on December 24, at which

---

[2] The Law Division judge was provided with a video of the practice, which was not available to us on appeal.

Bergman was not present and contrary to his instruction, Yanni "shadow wrestled and performed monkey rolls." He stopped when he became sick to his stomach. Ultimately, Yanni's physician diagnosed him as having suffered a concussion and ordered him to stop engaging in sports activities during the remainder of the school year.

The judge found these facts warranted summary judgment for defendants. She opined that plaintiffs did not establish a breach of the duty of supervision since they had no evidence that the practice, during which players were in close proximity and not wearing helmets, "was being conducted in a reckless or out-of-control manner before plaintiff was injured." She noted that the session was supervised by four coaches, and that immediately after the incident Scannell "attended to [Yanni] and sent him to the athletic trainer for treatment and evaluation." Yanni was thereafter pulled out of practice and referred to his own physician. As a result, the judge concluded that the injury was caused not from a lack of appropriate school supervision, or reckless conduct on the part of school staff, but merely from Yanni's participation in a "recreational sport activity." Since there was no breach of any duty, and no disputed material facts, she entered summary judgment.

On appeal, plaintiffs raise the following claims of error:

4

POINT I

THIS COURT SHOULD REVERSE THE LOWER COURT'S FINDING THAT A RECKLESSNESS STANDARD APPLIES TO RESPONDENT'S DUTY TO APPELLANT AND APPLY A NEGLIGENCE STANDARD.

POINT II

EVEN UNDER A RECKLESSNESS STANDARD, DEFENDANTS, [THE DISTRICT], [ABSEGAMI], [SCANNELL], AND [HAMMOND] ("DEFENDANT ABSEGAMI"), AND [BERGMAN], DID NOT MEET THEIR BURDEN OF SHOWING THAT THERE IS NO ISSUE OF MATERIAL FACT AS TO THEIR RECKLESS ACTIONS.

We review summary judgment decisions de novo. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014) (citing Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014)). We "apply the same standard governing the trial court—we view the evidence in the light most favorable to the non-moving party." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). In this case, the key relevant facts are not in dispute. The issue is whether, as a matter of law, defendants are entitled to dismissal.

Plaintiffs argue that the judge erred in employing the reckless standard. They assert the standard applies only to other participants in the sport, not to

those who supervise.  As to the supervisors, plaintiffs suggest, the standard should be ordinary negligence.

The reckless conduct language stems from Crawn v. Campo, 136 N.J. 494, 508 (1994).  In that case, the Court stated:

> Our conclusion that a recklessness standard is the appropriate one to apply in the sports context is founded on more than a concern for a court's ability to discern adequately what constitutes reasonable conduct under the highly varied circumstances of informal sports activity.  The heightened standard will more likely result in affixing liability for conduct that is clearly unreasonable and unacceptable from the perspective of those engaged in the sport yet leaving free from the supervision of the law the risk-laden conduct that is inherent in sports and more often than not assumed to be "part of the game."  One might well conclude that something is terribly wrong with a society in which the most commonly-accepted aspects of play—a traditional source of a community's conviviality and cohesion—spurs litigation.  The heightened recklessness standard recognizes a commonsense distinction between excessively harmful conduct and the more routine rough-and-tumble of sports that should occur freely on the playing fields and should not be second-guessed in courtrooms.

> [Campo, 136 N.J. at 508].

Before reaching the issue, it bears stating that nothing in the record indicates the school authorities, or the player who injured Yanni for that matter, were reckless.  For purposes of the motion, we will accept Yanni's recollection

that the coach told him to minimize the extent of his injury when he spoke with the trainer, the trainer completed the appropriate report, suggesting to Yanni's mother that he be kept out of practice until cleared. Two days after the incident, Yanni briefly participated in drills – which occurred off-site. His participation was contrary to Bergman's instruction. Yanni did not again practice. He prudently followed the advice of the school authorities and consulted with his own physician. Nothing in this sequence equates to reckless behavior.

Even if school coaches and trainers must "exercise reasonable supervisory care for the safety of students entrusted to them, and [are accountable] for injuries resulting from failure to discharge that duty[,]" a lesser standard – they did so here. Jerkins v. Anderson, 191 N.J. 285, 296 (2007) (quoting Caltavuturo v. City of Passaic, 124 N.J. Super. 361, 366 (App. Div. 1973)). They are expected to act with that degree of care "which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances." C.H. by Cummings v. Rahway Bd. of Educ., 459 N.J. Super. at 236, 243 (App. Div. 2018) (quoting Caltavuturo, 124 N.J. Super. at 366). This duty extends to foreseeable dangers that may arise from the careless or intentional acts of others. See Frugis v. Bracigliano, 177 N.J. 250, 268 (2003). Nothing in this record supports the claim that school officials failed to exercise reasonable supervisory

care over the participants in the practice. Nor does it support a claim that after the incident, they unreasonably performed their supervisory duties.

Viewing the evidence in the light most favorable to plaintiffs, the non-moving party, defendants are nonetheless entitled to judgment as a matter of law. Plaintiffs presented no circumstances that demonstrated the manner in which the practice was conducted, or its aftermath, was at fault. Defendants' supervision of the sport activity was reasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4573-18T2